OPINION *Page 2 
{¶ 1} Defendant-appellant William Shane Skeen appeals his conviction for dereliction of duty in the Fairfield County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} At all times relevant to this appeal, Appellant was a Deputy Sheriff with the Fairfield County Sheriffs Office, assigned to the Fairfield County Correctional Facility to perform duties in the day-to-day operation of the detention facility, including the management of inmates incarcerated at the facility.
 {¶ 3} On July 10, 2006, at 3:34 a.m., Lee McKittrick was processed and booked in the Fairfield County Jail after being arrested for DU I and reckless operation. McKittrick had obvious injuries to his person after being involved in a single-vehicle crash. Appellant and McKittrick knew each other and had a history of animosity between them.
 {¶ 4} Later that morning, while waiting to be arraigned by closed circuit television, McKittrick and the other male inmates were directed into a temporary holding cell. McKittrick began swearing at Appellant. A video recorder captured the interaction between McKittrick and Appellant standing face to face and Appellant shoving McKittrick into the holding cell. Once in the holding cell, the camera audibly recorded their voices, and Appellant warning McKittrick to "get out of his face." Once McKittrick failed to comply, Appellant pushed McKittrick up against the wall and held him against the wall. *Page 3 
 {¶ 5} On July 10, 2006, Lee McKittrick filed a citizen complaint with the Fairfield County Sheriffs Office alleging Appellant assaulted him while he was incarcerated in the Fairfield County Jail. Following an investigation, Appellant was indicted for assault, in violation of R.C.2903.13(A); dereliction of duty, in violation of R.C. 2921.44(C)(5); and disorderly conduct, in violation of R.C. 2917.11(A)(1).
 {¶ 6} The matter proceeded to jury trial, and at the close of the State's evidence, Appellant moved for a Criminal Rule 29 judgment of acquittal. At the close of Appellant's case, Appellant again moved the trial court for acquittal. Both motions were denied. The jury found Appellant guilty of the dereliction of duty charge, and not guilty of assault. The trial court made a finding of guilty with regard to the disorderly conduct charge.
 {¶ 7} Appellant now appeals, assigning as error:
 {¶ 8} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN FAILING TO GRANT DEFENDANT-APPELLANT'S MOTIONS FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
 {¶ 9} "II. THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BELOW TO SUPPORT THE CONVICTION OF THE DEFENDANT-APPELLANT."[1]
 {¶ 10} The assignments of error raised by Appellant assert common and interrelated issues; therefore, we will address the arguments together.
 {¶ 11} Appellant argues the trial court erred in denying his Criminal Rule 29 motion for acquittal, and there was insufficient evidence to support his conviction. *Page 4 
 {¶ 12} On review for a denial of a Criminal Rule 29 motion for acquittal, this Court must evaluate whether the evidence is such that reasonable minds can differ as to whether each material element of the crime charged has been proven beyond a reasonable doubt. State v.Bridgeman (1978), 55 Ohio St.2d 261. The standard is the same as is used to review a sufficiency of the evidence claim. State v. Carter (1995), 72 Ohio St.d3d 545. Accordingly, Appellant's conviction should be affirmed, if, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 13} Appellant was convicted of dereliction of duty, in violation or R.C. 2921.44(C)(5), which reads:
 {¶ 14} "(C) No officer, having charge of a detention facility, shall negligently do any of the following:
 {¶ 15} * * *
 {¶ 16} "(5) Fail to observe any lawful and reasonable regulation for the management of the detention facility."
 {¶ 17} Appellant cites the testimony of Phil Johnson, the Fairfield County Jail Administrator, stating, pursuant to his role as jail administrator, he is in charge of the Fairfield County Jail. As a result, Appellant contends the jail administrator is the individual "in charge" of the jail for purposes of the statute. Appellant argues since he is not the officer in charge, the evidence is insufficient to sustain his conviction.
 {¶ 18} We disagree with Appellant's interpretation of the statute, and find a common sense interpretation of the statute would mean more than one officer could *Page 5 
have charge of the facility. The evidence presented at trial indicates Appellant was an officer involved in the management and the day-to-day operation of the jail, and he was clearly an officer in charge of the prisoners within the detention facility.
 {¶ 19} At trial, Lee McKittrick testified:
 {¶ 20} "Q. All right. Now, Mr. McKitterick [sic], tell us exactly what happened and I'll, I'll just stop you in a little bit. It was unusual that morning?
 {¶ 21} "A. Uh, everything was fine, uh, up until, uh, the deputy asked us to move. The five of us, there was more than five of us in the holding cell for the video arraignment room. Um, he asked for five of us to move, then specified which five to move because I knew it was a specific order, uh, so I was the first one at the door. I was sitting next to the door to go out of the room. Nobody moved, so I stood up and I made the comment of, uh, "He didn't pick which five, so I guess I'll be one of the first," and walked out. When I walked out, uh, we got into an argument. I got into an argument with a deputy."
 {¶ 22} "* * *
 {¶ 23} "Q. Uh, are you restrained in any way?
 {¶ 24} "A. Belly chain and handcuffs.
 {¶ 25} "Q. Tell us what you mean by belly chain.
 {¶ 26} "A. Uh, it's a belt that goes around your waist with a metal ring in the center of that and the handcuffs are through that.
 {¶ 27} "Q. All right.
 {¶ 28} "* * * *Page 6 
 {¶ 29} "Q. About seventeen years you've known him? All right. Now, tell us what happened with this confrontation between yourself and Deputy Skeen.
 {¶ 30} "A. Um, in the middle of going from the arraignment room to the holding cell, uh, we had some, we exchanged words. I had turned around and said some choice words to him, um, and mentioned personal problems that we've had in the past, um, and it escalated from that point on.
 {¶ 31} "Q. Tell us how it escalated.
 {¶ 32} "A. Uh, I walked to the cell, to the holding cell door and upon going to the holding cell door, we were still arguing, um, talking about this personal incident, personal problems in the past and I was shoved through the door.
 {¶ 33} "Q. And where was Deputy Skeen at this time, was he in the holding cell with you?
 {¶ 34} "A. He's like halfway in the holding cell coming into the holding cell.
 {¶ 35} "Q. All right. And are you still handcuffed and shackled, so to speak?
 {¶ 36} "A. Yes, sir.
 {¶ 37} "Q. All right. Tell us what happens next.
 {¶ 38} "A. Uh, inside the holding cell we had, uh, a few more choice words, um, uh, "get off of me, get out of my face," um, a lot of cussing. Uh, I asked him if that's all he had and he come at me again.
 {¶ 39} "Q. Now, when you say he came at you again, let's get back to the first time. When did he come after you the first time?
 {¶ 40} "A. When did he come after me the first time?
 {¶ 41} "Q. Um, hum. *Page 7 
 {¶ 42} "A. Uh, when I was first going into the holding cell.
 {¶ 43} "Q. And when you say he came after you . . .
 {¶ 44} "A. Right when I turned around.
 {¶ 45} "Q. Did he do anything to you physically?
 {¶ 46} "A. He pushed me with his hands.
 {¶ 47} "Q. Where did he, where did he push you?
 {¶ 48} "A. From the chest area, just . . .
 {¶ 49} "Q. All right. And, uh, hard?
 {¶ 50} "A. Hard enough to knock me up against the wall.
 {¶ 51} "Q. All right. What happened next?
 {¶ 52} "A. It actually wasn't a wall, it was a bench that separated me and the wall.
 {¶ 53} "Q. All right. This wall you go towards, there was a bench on that wall?
 {¶ 54} "A. Yeah, there's a bench there.
 {¶ 55} "Q. That's for prisoners to sit and so forth?
 {¶ 56} "A. Yeah. A secured bench.
 {¶ 57} "Q. A secured bench, permanent?
 {¶ 58} "A. Yes.
 {¶ 59} "Q. So you hit that bench and came back?
 {¶ 60} "A. Yes.
 {¶ 61} "Q. All right. Then what happened?
 {¶ 62} "A. We had some more choice words. He said, "Get out of my face." I said, "Get out of my face," and, um, he took a few steps back. We escalated in words *Page 8 
again and then he came at me with hand on throat and arm, arm across chest, kind of like this motion, up against the wall.
 {¶ 63} "Q. Did he push you up against the wall?
 {¶ 64} "A. The back wall, yes.
 {¶ 65} "Q. What happened to your head when you were pushed the second time?
 {¶ 66} "A. It went up against the wall.
 {¶ 67} "Q. What kind of wall is that? What's it made of?
 {¶ 68} "A. Concrete wall.
 {¶ 69} (Pause)
 {¶ 70} "Q. Did it hurt?
 {¶ 71} "A. Yeah. (Laugh)
 {¶ 72} "Q. Where had, where had he grabbed you during this second confrontation?
 {¶ 73} "A. The second confrontation he grabbed me by my arms and kind of like picked me up and pushed me further back into the back of the cell.
 {¶ 74} "Q. And once you . . .
 {¶ 75} "A. I wasn't totally into the back of the wall then; I was still kind of on the side wall where the bench was.
 {¶ 76} "Q. All right. And then what did he do after that?
 {¶ 77} "A. After that he took a few steps back, we had a few choice words and then that's when he choked me and had his forearm against my chest. *Page 9 
 {¶ 78} "Q. All right. Do you remember which forearm he had against your chest?
His left, his right?
 {¶ 79} "A. Hun, uh. I don't remember.
 {¶ 80} "Q. But he had a forearm against your chest?
 {¶ 81} "A. Yes.
 {¶ 82} "Q. And where were his other arm and hand?
 {¶ 83} "A. On my neck.
 {¶ 84} "Q. Your throat area?
 {¶ 85} "A. Yes.
 {¶ 86} "Q. Now how long did this go on?
 {¶ 87} "A. Well, maybe less than, less than a minute, minute and a half, um,
before another deputy came in and I think he pulled him off of me. I told him to stop."
 {¶ 88} Tr. at 6-16
 {¶ 89} During the trial, the State introduced the audio recording of the incident:
 {¶ 90} "Male 1: Don't start the shit, McKitterick [sic].
 {¶ 91} "Male 2: I don't give a fuck.
 {¶ 92} "Male 1: Get in the cell.
 {¶ 93} "Male 2: Me and you got personal shit from the past (inaudible).
 {¶ 94} "Male 1: You want to do the personal shit now, boy?
 {¶ 95} "Male 2: What's your problem?
 {¶ 96} "Male 1: You want, you want to do the personal shit?
 {¶ 97} "Male 2: What's your problem?
 {¶ 98} "Male 1: You want to do it?
 Fairfield County, Case No. 07-CA-14 10 *Page 10 
 {¶ 99} "Male 2: Yeah, I can do it.
 {¶ 100} "Male 1: Get out of my face, boy.
 {¶ 101} "Male 2: Go ahead, do it again.
 {¶ 102} "Male 1: What are you going to do?
 {¶ 103} "Male 2: Go ahead and do it again.
 {¶ 104} (Inaudible)
 {¶ 105} "Male 2: (Inaudible) personal shit (inaudible) fucking stop.
 {¶ 106} "Male 1: Well, guess what, boy? (Inaudible) my face and I meant it, all right? Don't get in my face.
 {¶ 107} (Inaudible)
 {¶ 108} "Male 2: (Inaudible) beat up, man. (Inaudible)
 {¶ 109} (Inaudible)
 {¶ 110} (Videotape stopped)
 {¶ 111} Tr. at 164-165.
 {¶ 112} Further, the State introduced the testimony of Chief Deputy Jerry Perrigo who testified as to the Sheriffs Office's policies and procedures relative to the use of force.
 {¶ 113} "Q. Now, is physical force allowed within the Fairfield County Sheriff's Department for certain incidents?
 {¶ 114} "A. Yes.
 {¶ 115} "Q. And do you have down there a definition of physical force?
 {¶ 116} "A. Yes, under number B7.
 Fairfield County, Case No. 07-CA-14 11 *Page 11 
 {¶ 117} "Q. And would you read that please to the ladies and gentlemen of the jury?
 {¶ 118} "A. `Force is defined as other than incidental contact with the prisoners. This includes the use of chemical agents, electronic disabling devices or impact weapons, the striking of a person with a hand or other object or the throwing or shoving of a person causing a collision with the ground or other object. `
 {¶ 119} "Q. So, if a deputy hit somebody or shoves them into a wall or something of that nature, that is considered force, is that correct?
 {¶ 120} "A. Yes, sir.
 {¶ 121} "Q. Now, there are obviously exceptions, are there not, as to when force may be used?
 {¶ 122} "A. Yes.
 {¶ 123} "Q. And are they set forth as to when a deputy is allowed to use physical force?
 {¶ 124} "A. Yes, sir.
 {¶ 125} "Q. And would you state what they are, sir?
 {¶ 126} "A. In, under number eight, it says, `Physical force may be employed by deputies in the following situation: self-defense from assault by a prisoner, to defend another person form assault by a prisoner, to prevent a riot, escape or serious crime or to gain control or subdue an unruly prisoner who refuses to obey jail rules that govern prisoner conduct, to prevent a prisoner from inflicting self-harm and to prevent the destruction, damage of security equipment.' *Page 12 
 {¶ 127} "Q. All right. Now, uh, Deputy, I believe you have seen the video of the incident that took place while we were here, the reason why we're here today, is that correct, sir?
 {¶ 128} "A. Yes, sir.
 {¶ 129} "* * *.
 {¶ 130} "Q. Now, there are exceptions and I'd like to go through those one at a time. You have noted, have you not, Deputy Chief Perrigo, that this individual, uh, the inmate was belly-chained and handcuffed at the time this incident occurred, is that correct?
 {¶ 131} "A. Yes, sir.
 {¶ 132} "Q. Reason (A) for physical force to be used is `self-defense from assault by a prisoner.' Did you see, uh, Mr. McKitterick [sic] assaulting the deputy in this matter?
 {¶ 133} "A. No, I don't.
 {¶ 134} "Q. The second one is, `defend another person from assault by a prisoner.' Is Mr. McKitterick [sic] assaulting another prisoner at this time?
 {¶ 135} "A. No.
 {¶ 136} "Q. The third one is `to prevent a riot, escape or serious crime.' Is this force done to prevent any of those actions?
 {¶ 137} "A. No.
 {¶ 138} "Q. `(D) is to `gain control or subdue an unruly prisoner who refuses to obey jail rules that govern prisoner conduct.' Is that applicable to this situation?
 {¶ 139} "A. I don't believe it is, no.
 Fairfield County, Case No. 07-CA-14 13 *Page 13 
 {¶ 140} "Q. `(E) to prevent a prisoner from inflicting self-harm.' Was there any indication of that?
 {¶ 141} "A. No, sir.
 {¶ 142} "Q. And `(F) to prevent the destruction and damage of security equipment and property,' did you see any of that?
 {¶ 143} "A. No, sir.
 {¶ 144} "Q. So in your opinion, so far as the policy of the Fairfield County Jail and use of force, this action by Detective Skeen is improper and unwarranted. Is that a fair statement?
 {¶ 145} "A. Yes, sir. It is."
 {¶ 146} Tr. at 162-167 (L 2-10)
 {¶ 147} Upon review of the evidence presented at trial, a rational trier of fact could have found the essential elements of dereliction of duty proven beyond a reasonable doubt. We find there was sufficient, competent credible evidence to support the jury's veridct. *Page 14 
 {¶ 148} Appellant's first and second assignments Appellant's conviction for dereliction of duty is affirmed.
 By: Hoffman, J. Gwin, P.J. and Wise, J. concur *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's convictions in the Fairfield County Municipal Court are affirmed. Costs assessed to Appellant.
[1] Appellant does not challenge his conviction for disorderly conduct in his brief to this Court. *Page 1